UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CARLOS LEMA, individually and on behalf of all others similarly situated,

                                Plaintiff,

-against-

FITZCON EXCAVATION INC, PUB CONSTRUCTION/REN INC., ESCO HIRF CO INC., RONAN FITZPATRICK, CONNIE O'SULLIVAN, and LIAM O'SULLIVAN,

                                Defendants.
------------------------------------------------------------------------X

CIVIL ACTION NO.

COMPLAINT

Plaintiff Carlos Lema ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, Katz Melinger PLLC, complaining of the defendants, Fitzcon Excavation Inc ("Fitzcon"), Pub Construction/Ren Inc. ("Pub Construction"), Esco Hirf Co Inc. ("Esco Hirf"), Ronan Fitzpatrick "(Fitzpatrick"), Connie O'Sullivan ("Connie"), and Liam O'Sullivan ("Liam") (collectively, "Defendants"), respectfully alleges as follows:

**I. Nature of Action, Jurisdiction, and Venue**

1. This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL").

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

3. This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related

to Plaintiff's federal claims as to form the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiff, within this judicial district.

## II. Parties

5. Plaintiff is an individual residing in the State of New York.

6. At all relevant times, Plaintiff was employed by Defendants.

7. While employed with Defendants, Plaintiff was regularly engaged in interstate commerce and/or in the production of goods for commerce.

8. Defendants Fitzcon, Pub Construction, and Esco Hirf are domestic corporations with their principal place of business located at 84-52 Grand Avenue, Elmhurst, New York 11373.

9. Fitzcon, Pub Construction, and Esco Hirf are contractors that provide construction services in the Greater New York Area.

10. Defendants Fitzpatrick, Connie, and Liam are individuals residing, upon information and belief, in the state of New York.

11. At all relevant times, Fitzpatrick, Connie, and Liam were, and still are, officers, directors, shareholders, and/or persons in control of Fitzcon, Pub Construction, and Esco Hirf who exercise significant control over the companies' operations and have the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

12. Upon information and belief, during all relevant times, Fitzcon, Pub Construction, and Esco Hirf had common owners, officers and directors, and were controlled by Fitzpatrick, Connie, and Liam.

13. Upon information and belief, during all relevant times, Fitzcon, Pub Construction, and Esco Hirf operated out of the same location and at the same address: 84-52 Grand Avenue, Elmhurst, New York 11373.

14. Upon information and belief, during all relevant times, Fitzcon, Pub Construction, and Esco Hirf used the same phone numbers and email addresses to communicate with their customers.

15. Upon information and belief, during all relevant times, Fitzcon, Pub Construction, and Esco Hirf shared all of the same employees.

16. Upon information and belief, during all relevant times, Fitzcon, Pub Construction, and Esco Hirf utilized all of the same equipment and inventory.

17. Upon information and belief, during all relevant times, Fitzcon, Pub Construction, and Esco Hirf provided services to their customers without alerting the customers that they were different entities.

18. At all relevant times, Plaintiff was a covered employee within the meaning of the FLSA and the NYLL.

19. Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiff.

20. Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

21. Defendants operate in interstate commerce.

22. Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

23. The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Plaintiff on behalf of himself and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

24. The FLSA Collective Plaintiffs consist of no less than eighty (80) similarly situated current and/or former employees of Defendants who worked as laborers and have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages and other pay.

25. As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiff and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay employees the applicable overtime rate for all time worked in excess of forty (40) hours per week.

26. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

27. Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiff and the FLSA Collective Plaintiffs.

28. The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and locatable

through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

## IV. Factual Allegations

29. Plaintiff worked for Defendants from in or around 2013 until on or around January 28, 2020.

30. From the start of his employment until in or around May 2015, Plaintiff worked solely as a laborer.

31. As a laborer, Plaintiff's primary job duties included carpentry, sheetrock installation, demolition, and other construction-related tasks as required.

32. From in or around June 2015 until in or around December 2016, Plaintiff held the role of worksite manager in addition to his role as a laborer.

33. As a worksite manager, Plaintiff's additional job duties included ordering materials for the construction site, keeping track of the hours worked by other employees, and sending other employees' timesheets to Defendants' main office.

34. Despite being given the title of manager, Plaintiff did not have the authority to hire, fire, promote, or discipline employees; or set employees' schedules or rates of pay.

35. In or around December 2016, Plaintiff requested a demotion back to working exclusively as a laborer, as he did not receive additional compensation for the work he performed as worksite manager.

36. Thus, from in or around December 2016 until the end of his employment, Plaintiff worked solely as a laborer.

37. From in or around January 2014 until in or around December 2018, Plaintiff regularly worked Mondays through Saturdays, from approximately 7:00 a.m. until 5:30 p.m., with

a daily thirty (30) minute lunch break, for a total of approximately sixty (60) hours per week. However, approximately three (3) to four (4) days per week, Plaintiff was required to work until between 8:00 p.m. and 10:00 p.m., bringing his average weekly total to approximately seventy-two and one-fourths (72.25) hours per week.

38. From in or around January 2019 until the end of his employment, Plaintiff regularly worked Mondays through Saturdays, from approximately 7:00 a.m. until 5:30 p.m., with a daily thirty (30) minute lunch break, for a total of approximately sixty (60) hours per week. However, approximately one (1) to two (2) days per week, Plaintiff was required to work until between 6:00 p.m. and 7:00 p.m., bringing his average weekly total to approximately sixty-one and one-half (61.5) hours per week.

39. Throughout Plaintiff's employment, Defendants compensated Plaintiff at a fixed hourly rate, regardless of the number of hours that he worked each week.

40. From the start of his employment until in or around December 2014, Defendants compensated Plaintiff at an hourly rate of $15.00 for all hours worked.

41. From in or around January 2015 until in or around December 2016, Defendants compensated Plaintiff at an hourly rate of $20.00 for all hours worked.

42. From in or around January 2017 until in or around December 2018, Defendants compensated Plaintiff at an hourly rate of $25.00 for all hours worked.

43. From in or around January 2019 until the end of Plaintiff's employment, Defendants compensated Plaintiff at an hourly rate of $30.00 for all hours worked.

44. Throughout his employment, Plaintiff was paid by check with no accompanying paystub.

45. From the start of his employment until in or around December 2017, Plaintiff was not required to clock in and out. During this time period, the worksite manager on duty recorded the time that employees began and ended their workday.

46. From in or around January 2018 until the end of Plaintiff's employment, Defendants tracked the hours that Plaintiff worked by requiring him to punch in and out on Defendants' timekeeping system.

47. Throughout his employment, Plaintiff was a non-exempt employee pursuant to the FLSA and the NYLL, and was entitled to overtime compensation.

48. However, despite routinely working more than forty (40) hours per week, Plaintiff was not paid overtime compensation of one and one-half (1.5) times his regular hourly rate of pay for all hours he worked over forty (40) per week.

49. Defendants also failed to furnish to Plaintiff, at the time he was hired or at any time thereafter, a notice containing his rate of pay, the designated payday, or other information required by NYLL § 195(1).

50. Furthermore, Plaintiff did not receive, with each wage payment, a statement listing his regular and overtime rates of pay, the number of regular and overtime hours worked, gross wages, deductions, and anything otherwise required by NYLL § 195(3).

51. Defendants violated federal and state law by willfully failing to pay Plaintiff and similarly situated employees overtime compensation, and by failing to provide Plaintiff with the required payroll notices and wage statements.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
(Overtime Violations Under the FLSA)

52. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, repeats and realleges all prior allegations set forth above.

53. Pursuant to the applicable provisions of the FLSA, Plaintiff and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

54. Plaintiff and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

55. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay for each hour worked in excess of forty (40) hours in a week.

56. As a result of Defendants' violations of the law and failure to pay Plaintiff and the FLSA Collective Plaintiffs the required overtime wages, Plaintiff and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

57. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff and the FLSA Collective Plaintiffs are entitled to liquidated damages.

58. Judgment should be entered in favor of Plaintiff and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Overtime Violations Under the NYLL)

59. Plaintiff repeats and realleges all prior allegations set forth above.

60. Pursuant to the applicable provisions of the NYLL, Plaintiff was entitled to overtime compensation of one and one-half (1.5) times his regular hourly rate of pay or the applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

61. Plaintiff regularly worked in excess of forty (40) hours per week during his employment with Defendants.

62. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff overtime wages of one and one-half (1.5) times his regular hourly rate of pay for each hour worked in excess of forty (40) hours in a week.

63. As a result of Defendants' violations of the law and failure to pay Plaintiff the required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

64. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

65. Judgment should be entered in favor of Plaintiff and against Defendants on the Second Cause of Action in the amount of his unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Failure to Timely Pay Wages under the NYLL)

66. Plaintiff repeats and realleges all prior allegations set forth above.

67. Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiff was entitled to be paid his earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

68. During the relevant period, Defendants routinely failed to pay Plaintiff all of his earned wages in accordance with the agreed-upon terms of employment.

69. During the relevant period, Defendants failed to timely pay Plaintiff all of his earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

70. Throughout the relevant period, Defendants failed to timely pay Plaintiff all overtime wages earned by Plaintiff, in violation of NYLL § 191(1)(a)(i).

71. As a result of Defendants' violations of the law and failure to pay Plaintiff in accordance with NYLL § 191(1)(a)(i), Plaintiff has been damaged and is entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

72. As Defendants did not have a good faith basis to believe that their failure to pay wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

73. Judgment should be entered in favor of Plaintiff and against Defendants on the Third Cause of Action for all wages due, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Failure to Provide Payroll Notices Under the NYLL)

74. Plaintiff repeats and realleges all prior allegations.

75. Defendants failed to furnish to Plaintiff, at his time of hire or at any time thereafter, notices containing his rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; his regular pay day designated by the employer; and other information required by NYLL § 195(1).

76. As Defendants failed to provide Plaintiff with payroll notices as required by NYLL § 195(1), Plaintiff is entitled to liquidated damages in the amount of $50.00 per day in which the

violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

77. Judgment should be entered in favor of Plaintiff and against Defendants on the Fourth Cause of Action in the amount of $5,000.00, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Failure to Provide Wage Statements Under the NYLL)

78. Plaintiff repeats and realleges all prior allegations.

79. Throughout the relevant time period, Defendants failed to furnish to Plaintiff, with each wage payment, a statement listing: his regular and overtime rates of pay and basis thereof; the number of regular and overtime hours he worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

80. As Defendants failed to provide Plaintiff with wage statements as required by NYLL § 195(3), Plaintiff is entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

81. Judgment should be entered in favor of Plaintiff and against Defendants on the Fifth Cause of Action in the amount of $5,000.00, along with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR AN SIXTH CAUSE OF ACTION AGAINST
### FITZCON, PUB CONSTRUCTION, AND ESCO HIRF
(Corporate Combine)

82. Plaintiff repeats and realleges all prior allegations as set forth above.

83. Upon information and belief, Fitzcon, Pub Construction, and Esco Hirf operated as a single business operation.

11

84. Upon information and belief, Fitzcon, Pub Construction, and Esco Hirf records were maintained by the same persons and entities.

85. Upon information and belief, Fitzcon, Pub Construction, and Esco Hirf employed many of the same employees.

86. Upon information and belief, Fitzcon, Pub Construction, and Esco Hirf were each merely fragments of a larger business.

87. Upon information and belief, Fitzcon, Pub Construction, and Esco Hirf were not maintained as separate corporate entities.

88. Judgment should be entered on the Sixth Cause of Action in favor of Plaintiff and against Fitzcon, Pub Construction, and Esco Hirf, determining they were merely part of a corporate combine and declaring Fitzcon, Pub Construction, and Esco Hirf liable for each other's debts and for all amounts due in the First through Fifth Causes of Action herein, and such other legal and equitable relief as this Court deems just and proper.

WHEREFORE Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, prays for relief as follows:

a) on the First Cause of Action for all overtime wages due to Plaintiff and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b) on the Second Cause of Action for all overtime wages due to Plaintiff, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Third Cause of Action for all wages due to Plaintiff, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

d) on the Fourth Cause of Action for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with reasonable attorneys' fees in an amount to be determined by this Court;

e) on the Fifth Cause of Action for liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along

f) on the Sixth Cause of Action for an order and judgment determining that Fitzcon, Pub Construction, and Esco Hirf were merely part of a corporate combine and declaring Fitzcon, Pub Construction, and Esco Hirf liable for each other's debts and for all amounts due in the First through Fifth Causes of Action herein;

g) Interest;

h) Costs and disbursements; and

i) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 22, 2020

>*/s/ Nicola Ciliotta*
>Nicola Ciliotta
>Katz Melinger PLLC
>280 Madison Avenue, Suite 600
>New York, New York 10016
>Telephone: (212) 460-0047
>Facsimile: (212) 428-6811
>nciliotta@katzmelinger.com
>*Attorneys for Plaintiff*